UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
FELIPE GERARDO SAPON SAPON, JORDAN SAPON SAPON,
ESTEBAN SAPON SAPON, FRANCISCO QUINO, and
MARVIN YOENEL SALVADOR AJCET on behalf of
themselves and those similarly situated,

                        Plaintiffs

v.

144 NINTH GOTHAM PIZZA, INC., (d/b/a GOTHAM PIZZA),
852 EIGHTH GOTHAM PIZZA INC., (d/b/a GOTHAM PIZZA),
MICHAEL SHAMAILOV and  LANA SHAMAILOV,
jointly and severally,

                        Defendants.
--------------------------------------------------------------------------------x

**PLAINTIFFS' COLLECTIVE
ACTION COMPLAINT
WITH JURY DEMAND**

**Civil Case No.:    (DLC)**

**Related case: 15-cv-4069**

      Plaintiffs FELIPE GERARDO SAPON SAPON (hereinafter "Plaintiff Gerardo Sapon"),

JORDAN SAPON SAPON (hereinafter "Plaintiff Jordan Sapon"), and ESTEBAN SAPON

SAPON (hereinafter "Plaintiff Esteban Sapon"), FRANCISCO QUINO (hereinafter "Plaintiff

Francisco Quino") and MARVIN YOENEL SALVADOR AJCET (hereinafter "Plaintiff Ajcet"),

on behalf of themselves and those similarly situated (collectively, "Plaintiffs"), upon personal

knowledge as to themselves and upon information and belief as to other matters, allege as

follows:

### NATURE OF THE ACTION

      1.    This lawsuit seeks to recover unpaid minimum wages, overtime, unlawfully

withheld spread of hours premium, and statutory penalties for notice-and-recordkeeping

violations for plaintiffs and all others similarly situated. These named plaintiffs are hourly

employees, delivery person and prep cooks, who have worked at defendants' restaurants,

corporately owned Gotham Pizza with establishments at 144 19th St., New York, NY 11222; and

852 8th Avenue New York, NY 10019 (hereinafter "Gotham Pizza") and the owners of such establishments Michael Shamailov and Lana Shamailov. They have also been supervised by Jose Luis Barbueno and Mike LNU whose full name is unknown to plaintiffs.

2.      Defendants have deprived plaintiffs and their co-workers of minimum wage and overtime pay since at least on or about November 1, 2014 in violation of the Fair Labor Standards Act ("FLSA").

3.      Defendants have deprived plaintiffs of minimum wage, overtime pay and spread of hours premium since at least on or about November 1, 2011 in violation of the New York Labor Law ("NYLL").

4.      Defendants have unlawfully taken the tip credit allowance available under 29 U.S.C. 203 (m) and 12 N.Y.C.R.R. § 137.15 and paid plaintiffs below the minimum wage. Defendants were ineligible to receive such tip credit for designating certain persons as tipped employees when they did not meet the definition of tipped employees.

5.      Further, defendants have unlawfully withheld tips from plaintiffs in violation of FLSA and NYLL.  Specifically, fifteen percent (15%) of tips belonging to Plaintiffs were unlawfully retained by defendants on a regular basis to offset business losses. These unlawful deductions have occurred since at least on or about November 1, 2011 violation of 29 U.S.C. §201 *et seq.*, 29 C.F.R. § 531.35, NYLL §§193, 196(d) & 198(b) and 12 N.Y. Comp. Code R. & Regs. §146 *et seq.*

6.      Defendants have violated notice-and-recordkeeping requirements by failing to provide statements along with wages listing the name of employee, name of employer, address and phone number of employer, rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, gross wages, deductions, allowances, if any,

claimed as part of the minimum wage, and net wages. Defendants have further violated the requirement that they provide, upon employee request, explanations of how wages were calculated in violation of NYLL §195(3).

7.    Defendants have violated notice-and-recordkeeping requirements by failing to provide employees with wage notices as required on February 1 of every year in violation of NYLL § 195(1).

8.    Plaintiffs brings this action on behalf of themselves and similarly situated current and former employees who elect to opt-in to this action pursuant to 29 U.S.C. §§201 *et seq.* of the FLSA, and specifically, the collective action provision of 29 U.S.C. §216(b), to remedy violations of the wage-and-hour provisions of the FLSA.

9.    Plaintiffs also bring this action on behalf of themselves and similarly situated current and former employees pursuant to Rule 23 of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) to remedy violations of Article 6, §§190 *et seq.*, and Article 19 §§650 *et seq.* of the NYLL and the supporting New York State Department of Labor regulations.

10.    Further, Plaintiffs bring this action to seek redress for Defendants' pattern of wage theft against its employees, which has not been fully remedied, even after more than twenty employees at five locations have proven Defendants' violation of federal and state wage laws at trial, and subsequently settled their claims post defendants' appeal in 15-cv-4069.

### JURISDICTION AND VENUE

11.    Jurisdiction is proper as this Court has original federal question jurisdiction under 28 U.S.C. § 1331 since this case is brought under the FLSA, 29 U.S.C. §§201, *et seq.* This Court has supplemental jurisdiction over the NYLL claims, as they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

12.    As stated below Gotham Pizza is an employer engaged in commerce as defined in the FLSA, 29 U.S.C. §203(s).

13.    Defendants are part of a single integrated enterprise that jointly employed plaintiffs at all times relevant to this complaint, as the defendants are engaged in activities performed for a common business purpose as defined by FLSA, 29 U.S.C. § 203(r).

14.    Upon information and belief, based on information provided by plaintiffs, employees of defendants, Gotham Pizza is an enterprise whose annual gross volume of sales made, or business done, is in excess of $500,000. Specifically, Gotham Pizza is a popular restaurant with a thriving, high traffic locations on 19th Street and on 52nd St in Manhattan's Theatre District. As such, based on plaintiffs' personal knowledge of defendants' business, as well as upon information and belief, defendants are an enterprise engaged in commerce as defined by 29 U.S.C. §203.

15.    Upon information and belief, as well as first-hand knowledge of plaintiffs, employees of defendants, Gotham Pizza regularly conducted interstate business. Specifically, Gotham Pizza has regularly accepted credit card payments debiting funds from out-of-state bank accounts. In addition, many of the staples served at the restaurant include products grown out of state such as olives, pineapple, tomatoes, onions, mushrooms, etc.

16.    Defendants are covered employers within the meaning of the 29 U.S.C. §203(d) and NYLL §190.

17.    Upon information and belief, Gotham Pizza is subject to personal jurisdiction in the State of New York since it is located in New York County, State of New York.

18.    Upon information and belief, Defendant Michael Shamailov possesses or possessed and ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

19.    Defendant Michael Shamailov determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

20.    Defendant Shamailov is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Lana Shamailov is sued individually in her capacity as on information and belief, an owner, officer and/or agent of Defendant Corporation.

21.    Upon information and belief, Defendant Lana Shamailov possess or possessed operational control over Defendant Corporation, possess or possessd an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

22.    Defendant Lana Shamailov determined the wages and compensation of the employees of Defendants. Including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## THE PARTIES

### Plaintiffs

### Jordan Sapon Sapon

23.    Plaintiff Jordan Sapon is an adult individual who is a resident of Kings County, State of New York.

24.    Plaintiff Jordan Sapon was employed as a delivery person and prep cook by Defendants from on or about February 1, 2015 to April 1, 2016 at the 19th Street location.

25.    As a delivery person and prep cook by for Defendant Gotham Pizza, Plaintiff Jordan Sapon was a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL § 190; and is not exempt by FLSA, 29 U.S.C. § 213.

**Esteban Sapon Sapon**

26.    Plaintiff Esteban Sapon is an adult individual who is a resident of Queens County, State of New York.

27.    Plaintiff Esteban Sapon was employed as a delivery person and prep cook by defendants from on or about January 1, 2016 to in or about July 31, 2016   at   the   19th   Street location.

28.    As a delivery person and prep cook by for Gotham Pizza, Plaintiff Esteban Sapon was a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL § 190; and is not exempt by FLSA, 29 U.S.C. § 213.

**Felipe Gerardo Sapon Sapon**

29.    Plaintiff Gerardo Sapon is an adult individual who is a resident of  Kings County, State of New York.

30.    Gerardo Sapon was employed as a delivery person and prep cook by Defendants from on or about January 1, 2016 to on or about June 30, 2016 at the 19th Street location.

31.    As a delivery person and prep cook by for Gotham Pizza, Plaintiff Gerardo Sapon was a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL § 190; and is not exempt by FLSA, 29 U.S.C. § 213.

**Francisco Quino**

32.    Plaintiff Francisco Quino is an adult individual who is a resident of Queens County, State of New York

33.    Quino was employed as a prep cook by Defendants from on or about September 1, 2010 to on or about June 4, 2014 at the 8th Avenue location. At all times relevant, Quino was employed by Defendants as a delivery person and prep cook.

34.    As a delivery person and prep cook for Gotham Pizza, Plaintiff Quino was a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL § 190; and is not exempt by FLSA, 29 U.S.C. § 213.

**Marvin Yoenel Salvador Ajcet**

35.    Plaintiff Ajcet is an adult individual who is a resident of Queens County, State of New York

36.    Plaintiff Ajcet was employed as a prep cook by Defendants from on or about September 1, 2009 to on or about June 4, 2014 at the 8th Avenue location. At all times relevant, Plaintiff Ajcet was employed by defendants as a delivery person and prep cook.

37.    As a delivery person and prep cook for Gotham Pizza, Plaintiff Ajcet was a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL § 190; and is not exempt by FLSA, 29 U.S.C. § 213.

**Defendants**

38.    Each Defendant jointly and severally employed Plaintiff at all times relevant to this complaint at one or more of their restaurant locations. Each Defendant has had, individually and jointly, substantial control over plaintiffs' wages, hours and working conditions.

**Defendants 144 Ninth Gotham Pizza Inc., and 852 Eighth Gotham Pizza Inc**

39.     Defendants 144 Ninth Gotham Pizza Inc., and 852 Eighth Gotham Pizza Inc., are New York Corporations doing business as Gotham Pizza, a company with five locations in the New York, New York.

40.     Upon information and belief 144 Ninth Gotham Pizza, Inc. is a domestic corporation organized and existing under the laws of the State of New York. It maintains its corporate headquarters and operates as a single integrated enterprise called Gotham Pizza at 144 19th St., New York, NY  11222.

41.     Upon information and belief 852 Eighth Gotham Pizza Inc. is a domestic corporation organized and existing under the laws of the State of New York. It maintains its corporate headquarters and operates as a single integrated enterprise called Gotham Pizza at 852 8th Avenue New York, NY 10019.

**Michael Shamailov**

42.     Defendant Michael Shamailov (hereafter "Defendant Michael Shamailov on information and belief is a resident of New York County, New York. At all times relevant to this complaint Defendant Michael Shamailov has been the manager and owner of Gotham Pizza and possessed control over Plaintiffs' schedule, pay, and working conditions, enjoyed the right to hire and fire Plaintiffs, and exercised operational control at all times.

**Lana Shamailov**

43.     Defendant Lana Shamailov (hereafter "Defendant Lana Shamailov on information and belief is a resident of New York County, New York. At all times relevant to this complaint Defendant Lana Shamailov has been the manager and owner of Gotham Pizza and possessed control over Plaintiffs' schedule, pay, and working conditions, enjoyed the right to hire and fire Plaintiffs, and exercised operational control at all times.

## PLAINTIFFS

### Common Allegations

44.    For all of the named Plaintiffs whose individual factual allegations are stated below, (and except those specifically noted) the following common facts apply to each of the named plaintiffs, as well as all those similarly situated:

- At all times relevant, Defendants failed to provide Plaintiffs with wage statements or explanations of how their wages were calculated in violation of NYLL § 195(3).

- At all times relevant, Defendants failed to provide Plaintiffs with wage notices as required on February 1 of every year in violation of NYLL § 195(1).

- At all times relevant, Defendants have failed to pay Plaintiffs in accordance with the minimum wage provisions of FLSA, 29 U.S.C. § 206 and NYLL § 652.

- At all times relevant, Defendants failed to pay Plaintiffs at the overtime rate for all hours in excess of forty (40) hours per workweek, in violation of the overtime provisions of FLSA, 29 U.S.C. § 207 and NYLL §§650 *et seq.* and regulations promulgated thereunder.

- At all times relevant, Defendants required Plaintiffs to sign inaccurate payroll records, showing payment of tips minus fifteen percent (15%) of those actually received, and suggesting compliance with minimum wage requirements, or face retaliatory firing.

- At all times relevant, Defendants failed to provide Plaintiffs with adequate meal breaks in violation of NYLL §§162 *et seq.*

- At all times relevant, Defendants treated Plaintiffs as "tipped employees" to avoid paying the regular minimum wage. However:

- At all times relevant, Defendants failed to notify these Plaintiffs of Defendants' intention to take a tip credit against their minimum wage obligations as required by 12 NYCRR 146-1.3 and 29 U.S.C. § 203(m).

- At all times relevant, Defendants unlawfully retained a portion of tips, in violation of 29 U.S.C.A. § 203(m) and NYLL § 196–d.

- At all times relevant, Defendants, by violating these provisions of law, were illegally taking the tip credit allowance under 29 USC 203 (m), 29 CFR 531.59, and 12 NYCRR   137-1.5.

- Even if Defendants were entitled to pay a reduced minimum wage by applying the tip credit allowance, Defendants have failed to pay Plaintiffs (the reduced minimum cash wage in violation of FLSA, 29 U.S.C. § 206 NYLL § 652, NYCRR § 137-1.5.

### Individual Factual Allegations

**Jordan Sapon Sapon**

45.    From on or about February 1, 2015 to December 31, 2015, Plaintiff Jordan Sapon worked sixty-three and a half (63.5) hours per week for Defendants.

46.    During this period, Jordan Sapon's schedule was 6:30 p.m. to midnight on Mondays and Thursday; from 10:30 a.m. to midnight on Tuesdays; from 11:30 a.m. to 1 am on Fridays; from noon to midnight on Saturdays; and from 11 a.m. to midnight on Sundays. During this time he had Wednesday off.

47.     From on or about January 1, 2016 to April 1, 2016, Plaintiff Jordan Sapon worked 60.5 hours a week and was paid 5.50 per hour for all hours worked.

48.     During this period, Jordan Sapon's schedule was 6:30 p.m. to midnight on Mondays; from 10:30 a.m. to midnight on Tuesdays; from noon to 9pm on Thursdays; from 10 a.m. to 10:30 pm on Fridays; from 1:30 p.m. to 10pm on Saturdays; and from 10:30 a.m. to 10pm on Sundays. During this time he had Wednesday off.

49.     At all times relevant, Plaintiff Jordan Sapon worked without rest or meal breaks.

50.     At all times relevant, Plaintiff Jordan Sapon spent least 2 hours per shift engaged in prep and cleaning work, pizza toppings, making pizza sauce, preparing several trays of salads, assembling pizza boxes, and cleaning the base basement.

51.     Further, at no time was Plaintiff Jordan Sapon informed that he would receive the "tipped minimum wage" or that Defendants would be offsetting their minimum wage obligations with his tips.

52.     Nor did Plaintiff Jordan Sapon sign any statement affirming his consent to be paid by use of the tip credit.

53.     Further, not only was Plaintiff Jordan Sapon paid an hourly rate of $5.50 per hour in violation of the minimum wage law, but at all times relevant Plaintiff Jordan Sapon was paid $5.50 per hour for all hours, including those in excess for forty hours per week.

54.     Thus, at all times relevant Plaintiff Jordan Sapon was not paid overtime.

55.     Further, at no time was Plaintiff Jordan Sapon paid the spread of hours premium for those days on which he worked in excess of ten hours.

56.     Further, at all times relevant Plaintiff Jordan Sapon was required by manager Barbueno to remit 15% of his credit card tips to the company in order to receive his weekly pay.

57.    This remittance of tips occurred when Plaintiff Jordan Sapon received his weekly pay on Tuesday, when he received cash in hand and was required to sign a pay record.

58.    The pay record did not break out the hourly rate of day and did not note the 15% of tips that were withheld, but rather reflected that portion of the tips that was passed through to Plaintiff Jordan Sapon.

59.    Thus, at all times relevant Plaintiff Jordan Sapon was required to sign pay records that misstated his tips and that failed to include his hourly wage.

60.    Plaintiff Jordan Sapon was told that if he did not sign he would not be paid. Payment pursuant to these false records was made two days after signing.

61.    Further, Plaintiff Jordan Sapon was required to purchase his own helmet and bicycle to perform his work as a delivery person.

62.    Specifically, Plaintiff Jordan Sapon paid $1,450.00 for a bicycle to perform his delivery duties for Defendants.

63.    He was never repaid for these tools of the trade now was re repaid for bicycle expenses such as new chains, flat fixes, inner tubes and new tires and other required bike repairs.

64.    In addition to the cost of the bicycle these repairs averaged $40 per month.

**Esteban Sapon Sapon**

65.    During the relevant time period Plaintiff Esteban Sapon was employed by Defendant Gotham Pizza, Plaintiff Esteban Sapon regularly worked sixty-three (63) hours per week.

66.    At all times relevant, his schedule was 6:30 p.m. to midnight on Mondays and Thursday; from 10:30 a.m. to midnight on Tuesdays; from 11:30 a.m. to 1 a.m. on Fridays; from

noon to midnight on Saturdays; and from 11 a.m. to midnight on Sundays. During this time he had Wednesday off.

67.     At all times relevant, Plaintiff Esteban Sapon worked without rest or meal breaks.

68.     Not only was Plaintiff Esteban Sapon paid an hourly rate of $5.50 per hour in violation of the minimum wage law, but at all times relevant Plaintiff Esteban Sapon was paid $5.50 per hour for all hours, including those in excess for forty hours per week.

69.     Thus, at all times relevant Plaintiff Esteban Sapon was not paid overtime.

70.     Further, at no time was Plaintiff Esteban Sapon paid the spread of hours premium for those days on which he worked in excess of ten hours.

71.     Further, at all times relevant Plaintiff Esteban Sapon was required by manager Barbueno to remit 15% of his credit card tips to the company in order to receive his weekly pay.

72.     When Plaintiff Esteban Sapon asked manager Barbueno why his credit card tips were being retained by the company, Barbueno said that it was because the company needed to retain 15% of his tips to offset the service costs of its third-party vendor Seamless, which proceeded the company's online orders.

73.     This remittance of tips occurred when Plaintiff Esteban Sapon received his weekly pay on Tuesday, when he received cash in hand and was required to sign a pay record.

74.     The pay record did not break out the hourly rate of day and did not note the 15% of tips that were withheld, but rather reflected that portion of the tips that was passed through to Plaintiff Esteban Sapon.

75.     Thus, at all times relevant Plaintiff Esteban Sapon was required by to sign pay records that misstated his tips and failed to accurately state his earnings.

76.    Plaintiff Esteban Sapon was told that if he did not sign he would not be paid. Payment pursuant to these false records was made two days after signing.

77.    Further Plaintiff Esteban Sapon was required to purchase his own helmet and bicycle to perform his work as a delivery person.

78.    He was never repaid for these tools of the trade nor was he repaid for bicycle expenses such as new chains, flat fixes, inner tubes and new tires and other required bike repairs. In addition to the cost of the bicycle these repairs averaged $40 per month.

**Felipe Gerardo Sapon Sapon**

79.    Plaintiff Gerardo Sapon regularly worked sixty-two and a half (62.5) hours per week and was paid $5.50 per hour.

80.    At all times relevant his schedule was from 6:30 p.m. to midnight on Mondays; from 10:30 a.m. to midnight on Tuesdays; from noon to 9pm on Thursday; from 10 a.m. to 10:30 p.m. on Fridays; from 1:30 p.m. to 10 p.m. on Saturdays; and from 10:30 a.m. to midnight on Sundays. During this time he had Wednesday off.

81.    At all times relevant, Plaintiff Gerardo Sapon worked without rest or meal breaks.

82.    At all times relevant, Plaintiff Gerardo Sapon spent least 2 hours per shift engaged in prep and cleaning work, cutting pizza toppings, making pizza sauce, preparing several trays of salads, assembling pizza boxes, and cleaning the basement in addition to making deliveries as required.

83.    Further, at no time was Plaintiff Gerardo Sapon informed that he would receive the "tipped minimum wage."

84.    Nor did Plaintiff Gerardo Sapon sign any statement consenting to be paid by use of the tip credit.

85.     Thus, at all times relevant Defendants were not entitled to take the tip credit against Plaintiff Gerardo Sapon's wages.

86.     Further, not only was Plaintiff Gerardo Sapon paid an hourly rate of $5.50 per hour in violation of the minimum wage law, but at all times relevant Plaintiff Esteban Sapon was paid $5.50 per hour for all hours, including those in excess for forty hours per week.

87.     Thus, at all times relevant Plaintiff Gerardo Sapon was not paid overtime.

88.     Further, at no time was Plaintiff Gerardo Sapon paid the spread of hours premium for those days on which he worked in excess of ten hours.

89.     Further, at all times relevant Plaintiff Gerardo Sapon was required by manager Barbueno to remit 15% of his credit card tips to the company in order to receive his weekly pay.

90.     This remittance of tips occurred when Plaintiff Gerardo Sapon received his weekly pay on Tuesday, when he received cash in hand and was required to sign a pay record. The record included top his gross pay, number of hours worked, and his credit card tips.

91.     Nonetheless, the pay record did not break out the hourly rate of day and did not note the 15% of tips that were withheld, but rather reflected that portion of the tips that was passed through to Plaintiff Gerardo Sapon.

92.     Plaintiff Gerardo Sapon was told that if he did not sign he would not be paid. Payment pursuant to these false records was made two days after signing.

93.     Thus, at all times relevant Plaintiff Gerardo Sapon was required by to sign pay records that misstated his tips.

94.     Further, Plaintiff Gerardo Sapon was required to purchase his own helmet and bicycle to perform his work as a delivery person.

95.    He was never repaid for these tools of the trade nor was he repaid for bicycle expenses such as new chains, flat fixes, inner tubes and new tires and other required bike repairs. In addition to the cost of the bicycle these repairs averaged $40 per month.

**Francisco Quino**

96.    Plaintiff Quino worked seven (7) shifts every week. At all times relevant Plaintiff Quino worked from 10am to 11pm Sundays through Wednesdays. On Thursdays and Saturdays Plaintiff Quino worked from 6pm to 4am, and on Fridays worked from 10am to 4am.

97.    Thus, at all times relevant Quino worked ninety (90) hours per week.

98.    At all times relevant, Quino was paid $450 per week or $5.00 an hour for all hours worked.

99.    At all times relevant, Plaintiff Quino worked without rest or meal breaks.

100.    At all times relevant, Plaintiff Quino spent at least 2 hours per shift engaged in prep and cleaning work, cutting pizza toppings, making pizza sauce, preparing several trays of salads, assembling pizza boxes, and cleaning the basement in addition to making deliveries as required.

101.    Further, at no time was Plaintiff Quino informed that he would receive the "tipped minimum wage."

102.    Nor did Plaintiff Quino sign any statement consenting to be paid by use of the tip credit.

103.    Thus, at all times relevant Defendants were not entitled to take the tip credit against Plaintiff Quino's wages.

104.    Further, not only was Plaintiff Quino paid an hourly rate of between $5.00 per hour in violation of the minimum wage law, but at all times relevant Plaintiff Quino was paid such rate for all hours worked.

105.    Thus, at all times relevant Plaintiff Quino was not paid overtime.

106.    Further at no time was Plaintiff Quino paid the spread-of-hours premium for those days on which he worked in excess of ten hours.

107.    Further Plaintiff Quino was required to purchase his own helmet and bicycle to perform his work as a delivery person.

108.    Further at all times relevant Quino was required to remit 15% of his tips to the Company

109.    He was never repaid for these tools of the trade nor was he repaid for bicycle expenses such as new chains, flat fixes, inner tubes and new tires and other required bike repairs.

110.    At no time did Plaintiff Quino receive wage statements.

**Marvin Yoenel Salvador**

111.    At all times relevant Plaintiff Ajcet worked six (6) shifts every week. At all times relevant he worked three fourteen-hour (14) shifts from 10am to 12am shift and three eleven-hour (11) shifts from 5pm to 4am. He was off one day a week.

112.    Thus, at all times relevant Plaintiff Ajcet worked seventy five (75) hours per week.

113.    At no time did Plaintiff Ajcet receive breaks.

114.    At all times relevant, Plaintiff Ajcet was paid $450 per week or six dollars ($6.00) an hour for all hours worked.

115.    At all times relevant, Plaintiff Ajcet spent at least 2 hours per shift engaged in prep and cleaning work, cutting pizza toppings, making pizza sauce, cleaning, stocking and washing dishes, in addition to making deliveries as required.

116.    Further, at no time was Plaintiff Ajcet informed that he would receive the "tipped minimum wage."

117.    Nor did Plaintiff Ajcet sign any statement consenting to be paid by use of the tip credit.

118.    Thus, at all times relevant Defendants were not entitled to take the tip credit against Plaintiff Ajcet's wages.

119.    Further, not only was Plaintiff Ajcet paid an hourly rate of between $6.00 per hour in violation of the minimum wage law, but at all times relevant Plaintiff Salvador was paid these below minimum rates for all hours, including those in excess for forty hours per week.

120.    Thus, at all times relevant Plaintiff Ajcet was not paid overtime.

121.    Further, at no time was Plaintiff Ajcet paid the spread-of-hours premium for those days on which he worked in excess of ten hours.

122.    Further, Plaintiff Ajcet was required to purchase his own helmet and bicycle to perform his work as a delivery person.

123.    Further, at all times relevant Plaintiff Ajcet was required to remit 15% of his tips to the Company

124.    Plaintiff Ajcet was never repaid for these tools of the trade nor was he repaid for bicycle expenses such as new chains, flat fixes, inner tubes and new tires and other required bike repairs.

125.    At no time did Plaintiff Ajcet receive wage statements.

## FLSA COLLECTIVE ACTION ALLEGATIONS

126.    Plaintiffs bring their minimum wage, overtime, failure of notice-recordkeeping requirements, unlawful tip retention, and tools of trade claims for relief as a collective action under Section 16(b), 29 U.S.C. § 216(b) of the FLSA on behalf of all hourly workers employed by defendants at Gotham Pizza between on or about November 1, 2011 and the date of final judgment in this matter that elect to opt in to this action. Such Plaintiffs are hereinafter referred to as the "FLSA Collective Plaintiffs."

127.    Defendants committed the acts alleged in this complaint knowingly, intentionally and willfully within the meaning of FLSA, 29 U.S.C. § 216.

128.    At all times relevant to this complaint, and upon information and belief, plaintiffs and the FLSA Collective Plaintiffs are and/or have been similarly situated, and have had substantially similar compensation provisions.  Thus, the claims of Plaintiffs are essentially the same as those of the FLSA Collective Plaintiffs.

129.    All Plaintiffs and the FLSA Collective Plaintiffs have been subject to Defendants' policies and practices of willfully failing to pay them in accordance with minimum wage requirements in violation of FLSA, 29 U.S.C. § 206.

130.    All Plaintiffs and the FLSA Collective Plaintiffs have been subject to Defendants' policies and practices of willfully failing to pay overtime at a rate of one and a half times their hourly rate for hours worked in excess of forty (40) per workweek in violation of FLSA, 29 U.S.C. § 207.

131.    All Plaintiffs who are tipped employees and the FLSA Collective Plaintiffs who are tipped employees have been subject to Defendants' policies regarding tips described in this complaint, in violation of FLSA, 29 U.S.C. § 203(m) and NYLL.

132.    For notice and all other purposes related to claims brought under FLSA, 29 U.S.C. § 216(b), the names and addresses of the FLSA Collective Plaintiffs are available from Defendants' records. Notice can be provided via first class mail to the last address known to Defendants for each of the FLSA Collective Plaintiffs.

## RULE 23 CLASS ALLEGATIONS

133.    Plaintiffs bring their third, fourth, fifth, sixth and eighth claims for relief pursuant to Rule 23 of the Fed. R. Civ. P., on behalf of all hourly workers employed by defendants at Gotham Pizza Restaurant between the limitation period and the date of final judgment in this matter.

134.    All such persons shall hereinafter be referred to as the "Class." The Class members are readily ascertainable since the identity, addresses, time records, work schedules, positions and rates of pay for each Class member are determinable from the defendants' records that were required to have been kept under FLSA and NYLL. Notice can be provided pursuant to Rule 23 of the Fed. R. Civ. P.

135.    Joinder of all Class members is impracticable since, upon information and belief, there are more Class members. The exact number of Class members is presently unknown to Plaintiffs since all facts and records necessary for precise calculation are in the sole possession and control of the Defendants. Because of the foregoing, it will benefit the parties to address their claims as a Class.

136.    The Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class. The relief sought by plaintiffs is typical of the relief which would be sought by each member of the Class in separate actions. All Class members were subject to the same policies and practices alleged herein including Defendants' failure to pay minimum wages,

failure to pay overtime, and failure to provide wage statements and notices, as well as Defendants taking of unlawful deductions through retention of portions of Plaintiffs' tips. The aforesaid policies and practices of Defendants similarly affect all Class members. Plaintiffs and Class members have sustained similar injuries and damages as a result of Defendants' unlawful acts and/or omissions.

137.    Plaintiffs are fit to fairly and competently represent and protect the interests of the Class.  For the purposes of this action, plaintiffs have no interests that conflict with those of the Class.  Plaintiffs' attorneys have considerable experience in the field of employment litigation as well as class action litigation.

138.    Disposition of Plaintiffs' claims as a class action is superior to any other available means of adjudication for the foregoing reasons:

- Class members are low-wage workers who individually lack the necessary resources to effectively litigate against a corporate defendant;

- A class action is in the interests of judicial economy as individual litigation would result in the expenditure of considerable public resources;

- Injuries suffered by each Class member individually are small in comparison to the cost of individual litigation, dissuading and precluding redress of their claims;

- The claims shared by Class members involve important public policy interests that would otherwise go unaddressed due to aforesaid barriers to and limitations of individual litigation, and;

- A class action will provide anonymity for those Class members whose fear of retaliation would otherwise dissuade them from asserting their rights.  Upon information and belief, some Class members are still employed by Defendants.

139.    Questions of law and fact are common to all Class members and predominate over those of any individual Class member, including:

- Whether Plaintiffs and Class members were paid minimum wages;

- Whether Plaintiffs and Class members were paid the required overtime rate of one and one half times their hourly rate for all hours worked in excess of (40) per workweek;

- Whether Defendants complied with the record-keeping requirements of NYLL;

- Whether Defendants complied with the requirements for taking tip credits;

- Whether Defendants unlawfully retained tips to cover business losses, or otherwise unlawfully appropriated plaintiffs' tips;

- Whether Defendants had any method to keep track of the hours plaintiffs and Class members worked;

- Whether Plaintiffs were afforded the required break time required under NYLL.

## **CLASSWIDE FACTUAL ALLEGATIONS**

140.    Defendants committed the acts alleged in this complaint knowingly, intentionally and willfully.

141.    Defendants knew that the nonpayment of overtime would economically injure Plaintiffs and violate federal and New York State laws.

142.    Plaintiffs and Class members regularly worked in excess of forty (40) hours per workweek.

143.    Defendants unlawfully failed to pay Plaintiffs in accordance with minimum wage requirements of federal and state law.

144.    Defendants failed to provide Plaintiffs and Class members with a statement with each payment of wages as required by §195 *et seq*. of the NYLL.

145.    Defendants unlawfully failed to pay Plaintiffs and Class members at the overtime rate as provided by FLSA for all hours in excess of forty (40) in a workweek.

146.    Defendants violated NYLL § 195(3) by failing to furnish Plaintiffs with a statement with every payment of wages, listing gross wages, deductions and net wages.  In addition, defendants failed to furnish an explanation of how such wages were computed when Plaintiffs requested such an explanation.

147.    Defendants violated NYLL § 195(1) by failing to provide Plaintiffs with a yearly notice which includes rates of pay including straight time and overtime; how and when Plaintiffs are paid; the official name of Plaintiffs' employer and any other names used for business; the address and telephone number of the employer's main office or principal location; and allowances taken as part of the minimum wage, such as tip deductions.

148.    Defendants violated 12 NYCRR §146-2.9 by taking the tip credit against the minimum wage of ineligible workers.

149.    Defendants committed the foregoing acts against the Plaintiff, FLSA Collective Plaintiffs and members of the Class.

### FIRST CLAIM FOR RELIEF

**(FLSA Minimum Wage Claim, 29 U.S.C. §§ 201 *et seq.*, Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)**

150.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

151.    At all times relevant, each defendant has been, and/or continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

152.    At all times relevant, Defendants employed plaintiffs and FLSA Collective Plaintiffs as "employees" within the meaning of FLSA, 29 U.S.C. § 203.

153.    Defendants were required to pay Plaintiffs and the FLSA Collective Plaintiffs at a rate not less than the minimum wage rate under the FLSA for all hours worked.

154.    Upon information and belief, defendants knowingly failed to pay Plaintiffs and FLSA Collective Plaintiffs the required minimum wage under the FLSA for each hour worked.

155.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages for their unpaid compensation, liquidated damages as provided by the FLSA, attorneys' fees and costs, along with such other relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (FLSA Overtime Claim, 29 U.S.C. § 201 *et seq.* Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)

156.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

157.    Throughout the period covered by the applicable statute of limitations and upon information and belief, Plaintiffs and other FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per workweek.

158.    At all times relevant, and upon information and belief, Defendants have repeatedly and willfully failed to pay the named Plaintiffs and the FLSA Collective Plaintiffs in accordance with the overtime provisions of the FLSA for work performed in excess of forty (40) hours per workweek.

159.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek and are entitled to recover damages for their unpaid overtime compensation, liquidated damages as provided by the FLSA, attorneys' fees and costs along with such other relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF

**(New York State Minimum Wage Act Claim, NYLL Article 19 §§ 650 *et seq.,* Brought by Plaintiffs on Behalf of Themselves and the Class)**

160.    Plaintiffs, on behalf of themselves and those similarly situated, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

161.    Throughout the period covered by the applicable statute of limitations and upon information and belief, Defendants knowingly paid plaintiffs less than the minimum wage as required by NYLL and the supporting regulations of the New York State Department of Labor.

162.    Defendants did not pay the minimum wage for all hours worked by plaintiffs.

163.    Upon information and belief, Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of the NYLL.

164.    Plaintiffs seek to recover their unpaid compensation, liquidated damages pursuant to NYLL, Article 6, § 198, attorneys' fees, costs, pre- and post-judgment interest along with such other relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

**(New York State Minimum Wage Act - Overtime Claim, NYLL § 650 *et seq.,* Brought by Plaintiffs on Behalf of Themselves and the Class)**

165.    Plaintiffs, on behalf of themselves and those similarly situated, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

166.    Throughout the period covered by the applicable statute of limitations and upon information and belief, Defendants willfully and repeatedly failed to pay Plaintiffs at the overtime rate for hours worked in excess of forty (40) hours per workweek as required by NYLL.

167.    Plaintiffs seek and are entitled to recover their respective unpaid compensation, damages pursuant to NYLL, Article 6, § 198, attorneys' fees, costs, pre- and post-judgment interest along with such other relief as this Court deems just and proper.

168.    Plaintiffs have been damaged in an amount as yet determined, plus liquidated damages.

## FIFTH CLAIM FOR RELIEF

### (Notice-and-Recordkeeping Requirements, NYLL § 195(3), Brought by Plaintiffs on Behalf of Themselves and the Class)

169.    Plaintiffs, on behalf of themselves and those similarly situated, repeat, reiterate, and incorporate each and every preceding paragraph as if set forth fully herein.

170.    Defendants have failed to provide Plaintiffs with wage statements or explanations of how their wages were calculated in violation of NYLL § 195(3).

171.    Plaintiffs have been damaged in an amount as yet determined, plus liquidated damages.

## SIXTH CLAIM FOR RELIEF

### (Notice-and-Recordkeeping Requirements, NYLL § 195(1), Brought by Plaintiffs on Behalf of Themselves and the Class)

172.    Plaintiffs, on behalf of themselves and those similarly situated, repeat reiterate, and incorporate each and every preceding paragraph as if set forth fully herein.

173.    Defendants have failed to provide Plaintiffs with wage notices as required on February 1 of every year in violation of NYLL § 195(1).

174.    Plaintiffs have been damaged in an amount as yet determined, plus liquidated damages.

### SEVENTH CLAIM FOR RELIEF

**(FLSA Unlawful Tip Retention, 29 U.S.C. § 203(m) and 29 CFR 531.59, Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)**

175.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

176.    Throughout the period covered by the applicable statute of limitations, Defendants unlawfully treated workers it considered tipped workers in the various ways described in the complaint. Defendants at all times relevant took a 15% kickback on Plaintiffs' credit card tips.

177.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, have been damaged in an amount as yet determined, plus liquidated damages as provided by the FLSA, attorneys' fees and costs along with such other relief as this Court deems just and proper.

### EIGHTH CLAIM FOR RELIEF

**(Unlawful Deductions, NYLL §§ 193 & 196(d), Brought by Plaintiffs on Behalf of Themselves and the Class)**

178.    Plaintiffs, on behalf of themselves and those similarly situated, repeat, reiterate and incorporate each and every preceding paragraph as if set forth fully herein.

179.    Throughout the period covered by the applicable statute of limitations, Defendants unlawfully treated workers it considered tipped workers in the various ways described in the complaint. However Defendants filed to give notice as required. Under the circumstances, defendants are not allowed to have taken any "tip credit" from any workers.

180.    Plaintiffs and others similarly situated have been damaged in an amount as yet determined, plus liquidated damages.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, request relief as follows:

A.  Designation of this action as a collective action for the purposes of the claims brought on behalf of the FLSA Collective Plaintiffs, along with prompt issuance of opt-in notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the opt-in class;

B.  Designation of Plaintiffs as representatives of the FLSA Collective Plaintiffs;

C.  Designation of this action as a class action pursuant to Rule 23 of the Fed. R. Civ. P. for the purposes of the claims brought on behalf of Class members;

D.  An order declaring that Defendants violated the FLSA in the manners stated in this complaint;

E.  An order declaring that Defendants' violations of the FLSA were willful;

F.  An order declaring that Defendants violated the NYLL in the manners stated in this complaint;

G.  An order declaring that Defendants' violations of the NYLL were willful;

H.  An award of overtime compensation under the FLSA and NYLL;

I.  An award of minimum wage compensation under the FLSA and NYLL;

J.  A declaration that, based on violations of law, Defendants were not entitled to the "tip credit" and an award of withheld tip compensation pursuant to the FLSA and NYLL;

K.  An award of liquidated damages pursuant to the FLSA;

L.  An award of damages for violations of NYLL;

M. All penalties available under the applicable laws;

N. Attorneys' fees pursuant to 29 U.S.C. § 216, NYLL § 663 and all other applicable statutes;

O. Interest as provided by law; and

P. Such other relief as this Court deems just and proper.

## JURY TRIAL

Plaintiffs demand a jury trial for all causes of action and claims for which they have a right to a jury trial.

Dated: New York, New York
           November 16, 2017

Respectfully submitted,

MIRER MAZZOCCHI JULIEN &
CHICKEDANTZ, PLLC

By: Ria Julien
*Attorney for Plaintiffs*
150 Broadway, 12th floor
New York, NY 10038
(212) 231-2235
rjulien@mmsjlaw.com